UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES COMMODITY FUTURES TRADING COMMISSION, | ) ) | |
| Plaintiff, | ) ) | Case No. 12 C 6763 |
| v. | ) ) | Judge Andrea R. Wood |
| DONALD A. NEWELL and QUIDDITY, INC., | ) ) ) | Magistrate Judge Geraldine Soat Brown |
| Defendants. | ) | |

# MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, Magistrate Judge

This case alleging fraud in commodity trades was referred to this court for the resolution of discovery disputes. [Dkt 16.] The present motion raises issues under Fed. R. Civ. P. 26(b)(4)(B) and (C) concerning work-product protection for expert report drafts and lawyer-expert communications. The plaintiff, the United States Commodity Futures Trading Commission ("CFTC"), alleges that defendants' attorneys "commandeered" the drafting of two of defendants' expert reports, and moves to compel production of draft reports and communications between defendants, their attorneys, and their experts. (Pl.'s Mot.) [Dkt 96.] The CFTC filed a memorandum with exhibits in support of its motion. (Pl.'s Mem.) [Dkt 97.] Defendants have responded (Def.'s Resp.) [dkt 116], and CFTC has replied (Pl.'s Reply) [dkt 127]. For the reasons set out below, the motion is granted in part and denied in part.

**BACKGROUND**

Defendant Quiddity, Inc. ("Quiddity") is a registered Commodity Trading Advisor and Commodity Pool Operator owned and controlled by defendant Donald Newell. (Compl. ¶ 1.) [Dkt. 1.] The CFTC alleges that Quiddity and Mr. Newell violated federal commodities trading regulations. Defendants deny the CFTC's claims.

In November 2012, the District Judge scheduled initial discovery deadlines and referred supervision of discovery disputes to this court. (Order, Nov. 15, 2012.) [Dkt 16.] Expert discovery closed in March 2014. [Dkt 76, 82.] During expert discovery, defendants produced reports by three experts: John Burnside, John Parkes, and Margaret Wiermanski. Only the reports of Mr. Burnside and Mr. Parkes, produced in October and November 2013, are at issue in the CFTC's motion. (Pl.'s Mem. at 2 n. 1; Ex. 3, Rep. of John Parkes; Ex. 5-6, Reps. of John Burnside.)[1]

As the CFTC describes it, "During the discovery phase, the CFTC propounded on defendants requests for production that broadly sought all communications between defendants and their experts . . . ." (Pl.'s Mem. at 2.) In November 2013, in response to a production request by the CFTC, defendants turned over some drafts and notes related to defendants' expert reports, including two drafts of Mr. Burnside's report, emails between defense counsel and Mr. Parkes, and 16 pages of Mr. Parkes's handwritten notes. (*Id.*)

The CFTC maintains that the documents produced raised suspicions about the role of defendants' attorney, Nicholas Iavarone, in drafting the reports. For example, one of the drafts of Mr. Burnside's report, which the parties refer to as "version 7," purportedly shows multiple

---

[1] Mr. Burnside produced two reports: a primary report dated October 9, 2013, and a shorter supplemental report on November 11, 2013.

paragraphs of the report as being "inserted" by Mr. Iavarone. (Pl.'s Mem., Ex. 1.) It also shows a few words and phrases as being added by Mr. Newell. (*Id.*) Further, according to the CFTC, the production related to Mr. Parkes contain less work product than one would expect to see regarding the substance of the reports. (Pl.'s Mem. at 2.)

In December 2013, the parties' attorneys met to confer about this matter, and according to the CTFC's attorneys' notes from that meeting, defendants' counsel agreed to produce Mr. Parkes's emails in native format, to conduct a search of their own emails for additional relevant material and to have Mr. Newell do the same. (Pl.'s Mem., Ex. 9.) Defendants' counsel maintained, however, that no additional emails existed relating to Mr. Burnside. (*Id.*)

The CFTC deposed Mr. Burnside and Mr. Parkes in February and March, 2014, and questioned them both about Mr. Iavarone's contributions to their reports. Mr. Burnside testified that he discussed changes to his report with Mr. Iavarone, Mr. Iavarone typed the changes, and Mr. Burnside simply clicked "accept changes" to include Mr. Iavarone's additions. (Pl.'s Mem., Ex. 11, Dep. of John Burnside at 308, 487-90.) Mr. Burnside was sure there were additional parts of the report that Mr. Iavarone wrote and he accepted, but he could not recall which parts specifically. (*Id.* at 497-98.)[2] Similarly, Mr. Parkes testified that he and Mr. Iavarone passed drafts of the report back and forth and that "Mr. Iavarone was involved in the process of developing the opinions, the whole report." (Pl.'s Mem., Ex. 4, Dep. of John Parkes, at 494, 538-39.) Mr. Parkes also admitted that he incorporated portions of analysis from Mr. Burnside and other unknown sources into his report without independently assessing the accuracy of that analysis. (*Id.* at 405-06.)

---

[2] Mr. Burnside also testified that Mr. Newell may have corrected some typos but added "nothing of content." (Burnside Dep. at 497-98.)

The day before the CFTC filed its motion to compel, defendants turned over portions of a draft of Mr. Parkes's report from September 2013 that Mr. Burnside had recently found. (Pl.'s Mem., Ex. 16.) According to Mr. Iavarone, Mr. Newell sent the pages to Mr. Burnside after Mr. Burnside told Mr. Newell that it would be helpful to see examples of other expert reports, and Mr. Burnside had just re-discovered them in a box in his possession. (*Id.*) Mr. Iavarone said that defendants' counsel was previously unaware that Mr. Parkes's report had been provided to Mr. Burnside.[3]

Based on this information, the CFTC moved under Fed. R. Civ. P. 37(a) to compel production of documents it alleges were improperly withheld during expert discovery. The agency specifically requests two types of documents: (1) all drafts of the reports from Mr. Burnside and Mr. Parkes; and (2) communications between defense counsel, Mr. Newell, and defendants' experts that contain facts, data, or assumptions supplied by counsel. (Pl.'s Mem. at 1.) Defendants asserted protection over these documents under Rule 26(b)(4), but the CFTC challenges that assertion on two grounds, arguing first, that the work-product protection afforded by the rule does not apply because portions of the expert reports were likely drafted by Mr. Iavarone, and second, that the drafts and communications are discoverable under Fed. R. Civ. P. 26(b)(4)(C) because they contains facts, data, or assumptions that defendants' counsel provided and the experts relied on in forming their opinions. (*Id.*) In response, defendants defend the role Mr. Iavarone played in preparing the expert reports, contest the CFTC's interpretation of Rule 26(b)(4)(C), and argue that the CFTC's request for

---

[3] The CFTC's motion to compel requests a full copy of that draft. (Pl.'s Mem. at 8.) That request is moot, however, because defendants provided a full copy of the draft on the same day the CFTC filed its motion. (Pl.'s Reply, Ex. 17.) Included with the draft is an email from Mr. Parkes to Mr. Iavarone sending the draft on September 30, 2013. (*Id.*)

4

additional documents is unnecessary because it had ample opportunity to question the experts at issue during their depositions. (Def.'s Resp. at 4-14.)[4]

**LEGAL STANDARD**

"Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

In 2010, an amendment to Rule 26 expressly extended that protection to drafts of expert reports and communications between a party's attorney and an expert witness. Fed. R. Civ. P. 26(b)(4)(B) and (C) provide:

> *(B) Trial – Preparation Protection for Draft Reports of Disclosures.* Rules 26(b)(3)(A) and (B) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded.
>
> *(C) Trial – Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.* Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
>> (i) relate to compensation for the expert's study or testimony;
>>
>> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or

---

[4] A day before the CFTC filed the present motion to compel, the defendants moved to exclude testimony from one of the CFTC's experts, Dr. Jeffrey Harris. [Dkt 94.] The parties also have filed cross motions for summary judgment. [Dkt 111, 114.] The District Judge stayed the motion to bar Dr. Harris's testimony pending resolution of the motions for summary judgment. [Dkt 115.] The parties have not, however, requested that the court stay resolution of the CFTC's motion to compel.

> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

The advisory committee notes shed more light on the 2010 amendments. The notes explain that discovery of communications is not permitted beyond the specific topics discussed in the exceptions, noting that "[l]awyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics." Fed. R. Civ. P. 26 advisory comm. n. (2010). For example, the exception in Rule 26(b)(4)(C)(ii) "applies only to communications 'identifying' the facts or data provided by counsel; further communications about the potential relevance of the facts or data are protected." *Id.* Additionally, the exception in Rule 26(b)(4)(C)(iii) "is limited to those assumptions that the expert actually did rely on in forming the opinions to be expressed" and "[m]ore general attorney-expert discussions about hypotheticals, or exploring possibilities based on hypothetical facts, are outside this exception." *Id.* The notes also explain, however, that the term "facts or data" is intended to "be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert." *Id.*

## DISCUSSION

### I. The CFTC's argument that work-product protection does not apply

The CFTC initially argues that defendants cannot invoke the work-product protection afforded by Rule 26(b)(4)(B) and (C) because Mr. Iavarone "commandeered" the drafting of the

6

experts' reports. For that argument, the CFTC relies on *Gerke v. Travelers Casualty Ins. Co.*, 289 F.R.D. 316, 323-24 (D. Or. 2013), in which the court ordered discovery about an expert's report drafts and communications with counsel. The CFTC's invocation of *Gerke*, however, is not persuasive here. The court in *Gerke* was dealing with what it concluded was inappropriate behavior of counsel. To the extent that the decision includes broader statements about Rule 26(b)(4), this court respectfully disagrees with its interpretation of the amendment to that rule.

The written opinion in *Gerke* was preceded by earlier rulings in which the court ordered the plaintiff to produce certain documents from its expert's file. When a question arose as to whether that order had been complied with, the court further ordered that "the entirety of [the expert's] file contents" be produced. *Gerke*, 289 F.R.D. at 318-19. The court's later *in camera* review showed that plaintiff's counsel had neither produced certain documents from the expert's file nor listed the documents on the plaintiff's privilege log. *Id.* at 323. The court concluded that the plaintiff's counsel's actions, including certifying that production was complete without reviewing the expert's file, were sanctionable. *Id.*

Following that conclusion, the court took up the plaintiff's counsel's assertion of work-product protection under Rule 26 as a basis for the expert's refusal to answer deposition questions about whether plaintiff's counsel had written any part of the expert's report. *Id.* at 324. In a telephonic hearing during the expert's deposition, the court ruled, "[T]he question [is] whether anyone else wrote any portion of Mr. Painter's report that has been produced to defense counsel. That is a proper question and Mr. Painter has to answer it. . . . [L]awyers are not supposed to write their experts' reports or any portion of them." (*Id.*) The expert testified that he wrote the report, that the opinion and conclusions were his, but that the plaintiff's counsel helped him "clean it up." *Id.*

at 325. The expert also testified that he could not specify which words plaintiff's counsel changed without comparing the original draft. *Id.* Ultimately, the court rejected the plaintiff's counsel's assertion of work-product protection under Rule 26(b)(4)(B) and (C) and ordered the production of all drafts of the expert's report and a number of communications from the plaintiff's counsel. *Id.* at 330.

The court construed Rule 26(b)(4)'s protection as "not unlimited." *Id.* at 326. In fact, the court interpreted that protection quite narrowly, construing the exceptions in Rule 26(b)(4)(C)(i), (ii) and (iii) as "making discoverable lawyers' communications that jeopardize the experts' independence." *Id.* In reaching that conclusion, the court relied substantially on *McClellan v. I-Flow Corp*, 710 F. Supp. 2d 1092 (D. Or. 2010), stating, "*McClellan* teaches that Rule 26(b)'s attorney work-product has limits. Communications between a lawyer and the lawyer's testifying expert are subject to discovery when the record reveals the lawyer may have commandeered the expert's function or used the expert as a conduit for his or her own theories." *Gerke*, 289 F.R.D. at 328.

The *McClellan* decision, however, like the other decisions cited in *Gerke*, predates the amendment adding Rule (b)(4)(B) and (C), which was effective December 1, 2010. *See Gerke*, 289 F.R.D. at 329. Furthermore, the *McClellan* decision was not about discovery or work-product protection. The court there considered a *Daubert* challenge to certain experts' reports, taking into account pre-amendment case law regarding lawyers' assistance in drafting expert reports. *McClellan,* 710 F. Supp. 2d at 1118.

The purpose of amending Rule 26(b) in 2010, however, was to *change* the law about discovery regarding drafts of expert reports and counsel's communication with the expert, as reported by the Advisory Committee:

8

> Many courts read the disclosure provision [in Rule 26(a)(2)] to authorize discovery of all communications between counsel and expert witnesses and all draft reports. The Committee has been told repeatedly that routine discovery into attorney-expert communications and draft reports has had undesirable effects.
>
> * * * * *
>
> *This amendment is intended to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports.* The amendments to Rule 26(b)(4) make this change explicit by providing work product protection against discovery regarding draft reports and disclosures or attorney-expert communications.
>
> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients.

Fed. R. Civ. P. 26 advisory comm. n. (2010) (emphasis added).

In the present motion, the CFTC argues that defendants should be deemed to have forfeited Rule 26(b)(4)'s work-product protection because there is evidence that defendants' counsel participated in drafting sections of the report. That argument depends on the type of discovery the amendment was intended to prevent. The CFTC's approach would require an analysis of the degree of counsel involvement (both quantity and quality) in the drafting of the report.[5] Such an analysis would necessarily require production of all of the drafts of the report for comparison, as well as production of all, or virtually all, communications between expert and counsel. The drafters intended Rule 26(b)(4)(B) and (C) to protect against that discovery.

---

[5] For example, the CFTC asks the court to compare various versions of Mr. Burnside's report and the changes reflected by the "track changes" function (Pl.'s Mem. at 4, citing Ex. 1), as well as metadata purportedly showing that Mr. Iavarone added the "Materials Reviewed" section to an expert report (Pl.'s Mem. at 9, citing Ex. 11).

9

Thus, the court rejects the CFTC's argument that the court should undertake a detailed analysis of Mr. Iavarone's involvement in the drafting of the experts' reports and declare that defendants have forfeited the protection of Rule 26(b)(4)(B) and (C) based on some quantitative or qualitative threshold of attorney involvement.[6]

## II. The exceptions in Rule 26(b)(4)(C)

The CFTC alternatively argues that the drafts and communications at issue here fall under the exceptions in Rule 26(b)(4)(C). (Pl.'s Mem. at 1.) Work-product protection does not apply to communications that identify facts or data the attorney provided and the expert considered, or assumptions the attorney provided and the expert relied on. Fed. R. Civ. P. 26(b)(4)(C)(ii) and (iii). Pursuant to those exceptions, defendants must disclose communications from Mr. Iavarone that reveal facts or data defendants' experts considered or assumptions their experts relied on. (Pl.'s Mem. at 12.) As the Advisory Committee cautions, however, Rule 26(b)(4)(C) only requires disclosure of those parts of lawyer-expert communications that fall under the listed exceptions.

> [T]he discovery authorized by the exceptions does not extend beyond those specific topics. Lawyer-expert communications may cover many topics and, even when the excepted topics are included among those involved in a given communication, the protection applies to all other aspects of the communication beyond the excepted topics.

Fed. R. Civ. P. 26 advisory comm. n. (2010).

---

[6] Another court in this district denied a request similar to the CFTC's which likewise cited *Gerke* for support. *The Medicines Co. v. Mylan, Inc.*, No. 11 CV 1285, 2013 WL 2926944 at * 4 (N.D. Ill. June 13, 2013). There, although the defendant acknowledged that its expert used language from another expert's report, the court concluded that the plaintiff could use the similarity for cross-examination purposes.

A.  Defendants' Privilege Log

The CFTC requests production of 23 of 34 listed entries listed on defendants' privilege log. (Pl.'s Mem. at 16, citing Ex. 8.) Defendants assert that Rule 26(b)(4)(C) protects all 23 entries. Nine of those entries, however, are emails between only Mr. Iavarone and defendants' third witness, Ms. Wiermanski, or Mr. Iavarone, Mr. Newell, and Ms. Wiermanski. Because the CFTC states that its motion to compel "does not concern defendants' third expert witness, Margaret Wieranski" (Pl.'s Mem. at 2 n. 1), disclosure of those emails will not be compelled.

The remaining 14 entries are emails between Mr. Iavarone, Mr. Burnside, and Mr. Parkes.[7] Eleven of those emails are from Mr. Iavarone and are described as consisting of comments or questions on draft reports, review of a draft, "correction in data," and "[i]nformation regarding complaint." (Pl.'s Mem., Ex. 8.) Two emails were exchanged between Mr. Parkes and Mr. Iavarone regarding questions from Mr. Parkes about the scope of his assignment. (*Id.*) Finally, two other emails are from Mr. Burnside about "[c]omplaint questions" and "[c]ontent of draft report." (*Id.*) Based on those descriptions, defendants must review the emails listed in entries 2, 5, 6, 7, 8, 12, 13, 21, 27, 29, 30, 31, 32, and 34 of their privilege log, and produce any portions that contain materials covered by the exceptions in Rule 26(b)(4)(C)(i), (ii) or (iii). Defendants may redact any other portions of those emails.

B.  Additional Drafts of Expert Reports

The exceptions in Rule 26(b)(4)(C) apply explicitly only to communications between experts and lawyers, not to draft reports, which Rule 26(b)(4)(B) protects from production. Arguably, facts,

---

[7] Ms. Wiermanski was an additional recipient on three of these emails.

data or assumptions provided by an attorney to the expert should not be insulated from production simply because the vehicle of communication was a draft of the report or an attorney's revision to the expert's draft. Here, however, there is no need to resolve the question of whether the exceptions in Rule 26(b)(4)(C) apply to draft reports because there do not appear to be any additional drafts to be produced.

Notwithstanding defendants' insistence that they "have already produced all the reports which were shared by the experts" (Def.'s Resp. at 1), the CFTC argues that there must be additional drafts of the experts' reports because Mr. Burnside's draft indicates that it is version seven of which only two versions have been produced, and the draft of Mr. Parkes's report that Mr. Newell gave Mr. Burnside was belatedly produced the day before the CFTC moved to compel. (Pl.'s Mem. at 4, 8.) Although defendants have arguably waived the protection of Rule 26(b)(4)(B) for drafts that were transmitted to defendants' counsel by producing such drafts, the CFTC's argument that there are additional such shared drafts is simply speculation. Thus, based on defendants' representations, the CFTC's request for production of further drafts of the reports is denied. *See Daniels v. Spencer Gifts, LLC*, 2d, 2012 WL 488099 at *5-6 (N.D. Ill. Feb. 14, 2012) (denying request for additional discovery raising "mere possibility" more existed); *Bryant v. Gardner*, 587 F. Supp. 2d 951, 969 (N.D. Ill. 2008) (refusing to order further discovery when there was little to suggest more existed); *see also Inter-Med, Inc. v. ASI Medical, Inc.*, No. 09-CV-383, 2010 WL 2854288 at *2 (E.D. Wis. July 19, 2010) ("The defendant cannot produce documents which do not exist. Mere speculation that there is more will not suffice.") (internal quotation and alternations omitted).

C.  Additional Emails Related to Experts

Finally, there is a dispute as to whether defendants have complied with all the CFTC's production requests. The CFTC insists that defense counsel has not complied with its requests for production of emails held in Mr. Newell's and counsel's email accounts. The CFTC notes that defendants' counsel forwarded emails to the CFTC's attorney in March 2014—in response to the CFTC requests for information ahead of the experts' depositions—that purportedly contained emails that had not previously been disclosed. (Pl.'s Mem. at 17.) (Those emails are not included with the parties' filings, but defendants do not contest the CFTC's description.) The CFTC asks that those emails be produced in native format, as required by the Standing Order Related to Discovery of Electronically Stored Information entered in this case [dkt 17]. (Pl.'s Mem. at 17.) The CFTC's reply also observes that defendants produced responsive emails as late as May 2014. (Pl.'s Reply at 14.)

To the extent defendants have failed to produce emails in the correct format or to produce emails responsive to the CFTC's requests, the CFTC's motion to compel is granted. If any additional emails exist between Mr. Parkes, Mr. Burnside, and Mr. Iavarone that are responsive to the CFTC's production requests, defendants must produce them to the CFTC or, if defendants believe they are protected from disclosure, identify them on a supplemental privilege log.

**CONCLUSION**

For the reasons discussed, the CFTC's motion to compel is granted in part and denied in part as set out herein. Any additional documents required by this order shall be produced by defendants

to the CFTC's counsel by August 29, 2014. The motion is denied in regard to additional drafts of expert reports, and with regard to emails solely between counsel and Ms. Wiermanski.

_____
    Geraldine Soat Brown
    United States Magistrate Judge

August 25, 2014